Laramore, Judge,
delivered the opinion of the court:
Plaintiff, Yernon L. Johnson,[1] a United States citizen, claims a $7,574.77[2] refund of personal income taxes paid to the Internal Revenue Service, in the form of payroll withholding deductions, for the years 1959-68. Johnson, an employee of the Bureau of Public Roads of the United States Department of Commerce, was continuously present in Iran from March 8,1959 through June 9,1963 (except for a period of home leave from March 18 to June 8, 1961), performing consultant services for an Iranian highway system improvement and maintenance project.[3]
In 1956, the Bureau negotiated an agreement with the Government of Iran under which Iran obtained a loan from the Export-Import Bank of Washington and deposited the funds thereby obtained in a revolving fund (located in Washington, D.C.), to be used exclusively for the financing of United States expenditures undertaken in connection with the project.
*595 Under the authority given it.by the Mutual Security Act of 1954,[4] ch. 937, Title III, § 301-308, 68 Stat. 841, 842, the Bureau agreed to furnish technical personnel for assignment to Iran as technical advisors. Pursuant to a letter agreement, it was agreed that compensation paid to assigned personnel “will be paid or reimbursed out of the Dollar Working Fund” established by Iran. In addition, the agreement exempted plaintiff from Iranian taxation. During the period of plaintiff’s employment, Iran drew checks against this account payable to the Bureau. The Bureau, in turn, deposited those funds with the United States Treasury Department. Payments to Bureau personnel, including plaintiff, were in the form of Treasury Department checks.
Plaintiff remained a career Civil Service employee under the supervision of other Bureau engineers. The Iranian Government had neither control of, nor supervision over, plaintiff’s activities.
The narrow issue before the court is whether these payments are either excludible from plaintiff’s gross income as income from sources outside of the United States, or in-cludible in gross income because they are excepted from the general exclusion as payments by the United States or its agency.
We are concerned with section 911(a) (2) of the Internal Revenue Code of 1954 which exempts from United States taxation income from sources without the United States, earned by a United States citizen who is present in a foreign country for at least 510 days during any period of 18 consecutive months. There is no dispute that plaintiff has satisfied the residency requirements. Defendant, in the course of oral argument, conceded that Iran was the ultimate source of these funds. We conclude, however, that plaintiff was paid by an agency of the United States and the amounts received are, therefore, taxable.
Section 911(a) (2) provides:
SECTION 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES,
(a) General Buie. — The following items shall not be *596 included in gross income and shall be exempt from taxation * * *:
* * * ■
(2) Presence m foreign cov/ntry for 17 months. In ■ • the case of an individual citizen of the United States who during any period of 18 consecutive _ months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) * * *.
This precise issue was considered by the Court of Appeals for the District of Columbia in Commissioner v. Wolfe, 361 F. 2d 62 (D.C. Cir. 1966), cert. denied, 385 U.S. 838. After examining the relevant legislative history,' that court, ip." a clearly reasoned opinion, reversed the Tax, Court and found against the taxpayer. The court concluded that Wolfe was an employee of, and paid by, the United States and that .the letter agreement for reimbursement did not alter that relationship. Since the oral argument in our case, the Court of Appeals for the Fifth Circuit has decided the identical issue adversely to the taxpayers in the case before it. United States v. John C. Johnson & Lillian F. Johnson, 386 F. 2d 824 (1967). ' ,
Plaintiff urges us to.ignore the Wolfe decision,and contends that his salary was paid by that-entity which .was the source of the funds. Iran is that source because, it bore the economic burden of the payment. In our view, plaintiff confuses the source requirements with.-those of payment (section 911(a)(2)) by equating them. They are distinct elements. The United States was obligated to pay plaintiff his salary and plaintiff had neither a contractual relationship with, nor a right to obtain payment from, Iran.
Our concern is with the fayment of funds, not with their source (which is admittedly Iran). The Fifth Circuit in United States v. Johnson, supra, adopted the TFoi/e'decision, and its reasoning, as the basis'for denying a réfund claim by a plaintiff employed by Iran under the same agreement herein involved. Payment, they found, was made by the United States. :
*597 Plaintiff relies upon, and requests that we follow, the Tax Court opinion in Louis H. Mooneyhan, 47 T.C. 693 (1967).[5] That court concluded that the United States acted merely as a paymaster for the Iranian Government under the same agreement which also employed Vernon L. Johnson. We, however, reject both their conclusion and reasoning.
Our examination of the legislative history leads, us to agree with both the District of Columbia Circuit and the Fifth Circuit. Section 911(a) (2) was not designed to exempt citizens of the United States who are serving abroad but remain United States employees and are paid by the United States. The parenthetical exception of section 911(a) (2) is specifically applicable to this case.
Defendant cannot be considered a mere paymaster acting on behalf of Iran when it alone is obligated to compensate plaintiff, without regard to whether or not Iran ever prepays or reimburses defendant for its expenditures.
Iran contracted with the Bureau and it was obligated to pay the United States, but plaintiff received his salary without regard to Iran’s compliance or noncompliance with that obligation. Plaintiff’s salary was contingent upon satisfactory performance of Ms contractual employment obligation to the United States. We conclude, therefore, that for the reasons stated plaintiff is not entitled to any recovery.
EINDINGS ON FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiffs, Vernon L. Johnson and Phyllis F. Johnson, are husband and wife.[1] They timely filed their joint federal income tax returns on the cash basis of accounting for the calendar years 1959 through 1963, and paid the taxes shown thereon to be due by application of amounts previously collected as payroll deductions for federal income tax purposes.
*598 2. The plaintiffs duly filed claims for years 1959 through 1963. In each of the claims for refund (totaling $7,574.77) the plaintiffs asserted the same reasons they now allege in this timely suit for refund.
2. At the time of filing each case, no action had been taken on the claims for refund for the years in suit and more than 6 months had elapsed since the filing of each claim.
4.The sum of $7,574.77 claimed as a refund by the plaintiffs is that portion of the taxes paid by the plaintiffs during the years 1959 through 1963 attributable to the inclusion in gross income of salary payments to the plaintiff in the following amounts:
1959 _$8,455.00
1960 _ 11, 884. 80
1961_12,015.21
1962 _ 12,309.60
1963 _ 5,366.55
The salary payments were made to the plaintiff by the Bureau of Public Eoads, United States Department of Commerce, and were compensation for services rendered by the plaintiff while he was in Iran as an employee of the Bureau from March 9,1959, through June 9,1963 (except for a brief period of home leave from March 18 to June 8, 1961). The plaintiff’s services were performed pursuant to an agreement between the Bureau of Public Eoads and Iran which involved the development of a highway system in Iran.
5. During 1956, the Bureau of Public Eoads and the Government of Iran negotiated an agreement pertaining to improvement and maintenance of the Iranian highway system. Iran wanted to secure the assistance of trained personnel and to obtain equipment of the United States, in order to implement a highway development program (hereinafter sometimes referred to as the project).
6. Pursuant to the aforesaid negotiations, on December 7, 1956, Iran entered into a credit agreement with the Export-Import Bank of Washington to obtain the necessary funds to finance the planned project. Pursuant to article III of the credit agreement, Iran designated the Biggs National Bank of Washington, D.C. as a depository for funds to be used in connection with the planned project. The funds so deposited *599 constituted a revolving fund to be used by Iran exclusively for the purpose of financing United States dollar expenditures in connection with the project. In accordance with the provisions of articles III and IV of the credit agreement, the Export-Import Bank advanced $947,597.96 to Iran from 1957 through March 25,1959. As of January 1,1964, Iran had repaid to the Export-Import Bank, the entire amount of this loan, plus interest. The credit agreement was extended through the end of 1963.
Under the terms of the credit agreement, the Export-Import Bank retained a system of controls over the use of the moneys loaned to assure that they had been expended in furtherance of the project and that all materials, equipment and supplies for which expenditures were made, were manufactured or produced in the United States, and that all services for which expenditures were made, were supplied by entities located in the United States or by residents or citizens thereof.
7. By a letter agreement dated December 18, 1956, the Bureau of Public Hoads agreed with Iran to furnish certain services to assist in the project. The letter agreement was extended by the Bureau of Public Roads to December 31,1960 and through further amendment, was extended <at least through the end of 1963.
The letter agreement provided that the Bureau of Public Roads would assign personnel for work in Iran, for a period not to exceed 2 years, unless the credit agreement was extended. The Bureau of Public Roads entered into this agreement and undertook the project, pursuant to and in accordance with the applicable provisions of the Mutual Security Act of 1954, ch. 937,68 Stat. 832.
The declared policy and purpose of the United States in the Mutual Security Act of 1954 is to aid the efforts of the people of economically underdeveloped areas to develop their resources and improve their working and living conditions by encouraging the exchange of technical knowledge and skills and the flow of investment capital to countries, and constructively contribute to raising standards of living. Mutual Security Act of 1954, ch. 937, Title III, § 301, 68 Stat. 841.
The Mutual Security Act of 1954 implemented its declared policy and purpose by empowering the United States Gov- *600 emment to establish technical cooperation programs in conjunction with any foreign government or foreign government agency, and to enter into and perform contracts in connection with such technical cooperation programs. Mutual Security Act of 1954, ch. - 937, Title III, § 307, 68 Stat. 842. The letter agreement between Iran and the Bureau of Public Boads was such a contract.
8. The manner of payment of compensation to the assigned employees was described in the letter agreement 'as follows:
* * * * *
, V. compensation op PERSONNEL ASSIGNED TO IRAN
The compensation of all personnel of the Bureau[2] assigned to Iran from the date of assignment to the date of separation from the program will be paid or reimbursed out of the Dollar Working Fund to be established by your Government[3] as provided in Paragraph YIL
The compensation of each employee will include his salary, post differential, post allowance, quarters allowance, education allowance, and separation allowance, all as prescribed for an employee of the Bureau of his grade and term of service by the applicable United States statutes and regulations as now in effect ór hereafter amended. Salaries and wages will be paid on the basis of a 40-hour week in accordance with existing United States regulations.
* * * * *
VII. DOLLAR WORKING FUND
To carry out the conditions of the $5,000,000 loan from the Export-Import Bank signed on December 7, 1956 your Ministry[4] will establish a Dollar Working Fund in the maximum amount of $500,000 with the Bureau to be at the disposal of the Bureau for the payments as set out in this Agreement.
The Dollar Working Fund shall be established in the amount of $200,000 and shall be replenished by your Government from time to time upon the request of the Bureau accompanied by an itemized statement signed by an authorized representative of the Bureau setting forth all expenditures made therefrom which have not been reported in any previous itemized statement. *601 With respect to each such expenditure, such statement shall specify the date, purpose and amount thereof and the name and address of the person or other entity receiving the same and shall be accompanied by such supporting documents as your Government may reasonably request.
Each such replenishment of the Dollar Working Fund by your Government shall be in an amount equal to the total of the expenditures set out in the itemized statement accompanying the request for replenishment. In connection with any such replenishment of the Dollar Working Fund, your Government shall deposit therein such additional amount as the Bureau may recommend and your Ministry may approve to meet prospective expenditures from the Dollar Working Fund; provided, however, that the amount in the Dollar Working Fund at any one time shall not exceed $500,000.
‡ ‡ ‡ ^
9. Advances were made by the Export-Import Bank by deposit to Iran’s account in the Biggs National Bank, Washington, D.C. Iran drew checks against this account payable to the United States Bureau of Public Boads. Such checks were deposited in the United States Treasury Department. The record does not show whether the deposit of such checks in the United States Treasury was antecedent to or subsequent to the corresponding expenses incurred by the Bureau of Public Boads which they were to cover. In this connection, paragraph VI of the letter agreement between the Bureau and Iran is pertinent. It provides as follows:
VI. EXPENSES IN THE UNITED STATES
All expenses incurred in the performance of services in connection with the program which are to be performed by the Bureau in the United States will be for the account of your Government [Iran] and will be paid or reimbursed out of the Dollar Working Fund. Such expenses shall include the cost of transportation and traveling expenses and all other out-of-pocket expenses incurred in the performance of such services. All such expenses will be as prescribed by the applicable United States statutes and regulations as now in effect or hereafter amended..
10. All salary payments made by the Bureau of Public Boads to its personnel (including the plaintiff herein) were made by official United States Treasury checks.
*602 11. There was no agreement or requirement (between Iran and the plaintiff, or between the plaintiff and the Bureau of Public Eoads), that the salary payments under the project were dependent upon advances of funds by Iran to the dollar working fund of the Bureau of Public Roads account. Furthermore, there was no requirement or agreement that salary payments to the plaintiff (while he was assigned to the Iran division of the Bureau of Public Roads) be made out of Iranian funds. The Bureau of Public Roads had the primary and sole obligation to make salary payments to the plaintiff. However, under the terms of the letter agreement, the furnishing of services by the Bureau of Public Roads to Iran was contingent upon payment or reimbursement pursuant to the dollar working fund arrangement by Iran to the Bureau of Public Roads for those services it rendered to Iran.
12. On April 1, 1958, plaintiff (then employed as a maintenance foreman in the Fairbanks, Alaska office of the Bureau of Public Roads) was notified that he had been determined eligible for assignment on the project in Iran, for which assignment he had previously submitted an application.
13. On November 20, 1958, the plaintiff received an appointment in the excepted service of the United States Government and was assigned to perform services in Iran as an employee of the Bureau of Public Roads. The transfer of the plaintiff from Alaska to Iran in March 1959 was an action taken by the Bureau of Public Roads on its initiative, with the agreement of the plaintiff. The transfer was not the action of any foreign government.
14. At all times relevant hereto the plaintiff was an employee of the Bureau of Public Roads. While assigned to Iran, the plaintiff was ■under the direct supervision and control of the division engineer of the project, who also was an employee of the Bureau of Public Roads and was in charge of all Bureau employees assigned to the Iranian division. The division engineer who controlled and directed the plaintiff’s work while in Iran was solely responsible to the Bureau of Public Roads and was in no way connected with, regulated by or directed by the Government of Iran. Neither the Iranian Government nor any of its employees was em *603 powered to or did supervise or control the work of any of the employees of the Iranian division. Iran could not hire or fire any of the employees of the Iranian division nor in any manner control the salary paid or the promotions given to any of the personnel of the Bureau of Public Roads assigned to Iran.
15. From March 8, 1959, until March 17, 1961, plaintiff was continuously present in Tabriz, Iran. After a visit to the United States in 1961, he returned to Iran and was continuously present in Shiraz, Iran from June 9,1961, to June 9,1963.
16. During the time that the plaintiff was in Iran, there was deducted from his biweekly salary, an amount representing his cost of United States Government employee group life insurance. The United States contributed an additional amount on a biweekly basis equal to one-half of the employee’s contribution towards the cost of this insurance. In addition, during the time that plaintiff was in Iran, there was deducted from his salary (beginning in the middle of 1960 and continuing thereafter) an amount representing his cost of United States Government employee group health insurance. The plaintiff was entitled, during this time, to exercise full rights under these Congressionally enacted programs. Also, as a United States Government employee in the excepted service, having past civil service status, plaintiff was eligible to receive (and did receive) various other fringe benefits given to Government employees by various federal laws.[5]
17. During the years in issue, the plaintiff was a career civil service employee of the Bureau of Public Roads. Throughout the period involved in this suit, he was in the excepted service, however he had mandatory reemployment rights in the competitive service.
18. At no time did the plaintiff have any right to request or demand payment of his salary from the Iranian Government. He did not acquire (either by virtue of his employment agreement with the Bureau of Public Roads or his *604 assignment to its Iranian division) any direct rights against Iran, except that, as an employee of the Iranian division, he was entitled to Iranian tax exemption and indemnification from, claims as provided in articles X and XII of the letter agreement aforesaid.
19. During the taxable years in issue, plaintiff did not pay any income taxes to the Iranian Government nor to any other foreign government.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover, and the petitions are dismissed.

 Phyllis F. Johnson is a party-plaintiff because joint returns were filed for the years 1959 through 1903.

 The $7,574.77 was paid as follows:
1959 _ $1,161.46
1960 _ 1, 774. 20
1961 - 1,797. 67
1962 _ 1, 760. 50
1963 _ 1, 080. 94

 We are indebted to Commisioner William E. Day for his assistance in the preparation of his memorandum opinion and findings of fact.

 Repealed. Act of Sept. 4, 1961, Pub. L. 87-195 § 642, 75 Stat. 460.

 Now on appeal to the Sixth Circuit.

 Plaintiff, Phyllis P. Johnson, is a party hereto only because the plaintiffs filed Joint returns. Hereafter, the term “the plaintiff” shall refer to Vernon h. Johnson.,

 Bureau oí Public Roads.

 Government of Iran.

 Ministry, of Iran.

 These laws are: Performance Rating Act; Incentive Awards Act; Federal Employees’ Pay Act; Annual and Sick Leave Act; Federal Employees’ Compensation Act; Civil Service Retirement Act;' Unemployment Compensation Act.