Joseph H. McKENZIE

v.

UNITED STATES of America.

Civ. No. 3–76–33.

United States District Court,
E. D. Tennessee, N. D.

Sept. 30, 1976.

Clyde W. Key, Knoxville, Tenn., for plaintiff.

Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., J. V. Crockett, III, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a tax refund case in which plaintiff alleges that he overpaid his taxes for the calendar years 1971 and 1972 and seeks a refund in the amounts of $1215.43 and $1,355.48, respectively.

Plaintiff contests the disallowance of a traveling expense deduction for food, lodging and miscellaneous business expenses that he incurred in New York City. He contends that these expenses were deductible under 26 U.S.C. § 162 because New York City was not his tax home.[1]

The facts are not in dispute. The parties agreed to submit this case to the Court for a judgment on stipulated facts. The stipulation is based on plaintiff's deposition of June 23, 1973, which the Court has carefully examined.

Plaintiff worked for the American Cigar Company for over twenty years. He was originally employed as a salesman and later elevated to a District Manager, and still later became a Section Sales Manager. In 1970, he became General Sales Manager. During the years involved in the litigation, he maintained his office in New York City, which was furnished by his employer. His employer also furnished secretarial help and other assistance.

During the calendar year 1971, he spent 128 nights in New York. In 1972, he spent 125 nights in New York. While in New York he attended various meetings, including meetings with manufacturers, marketing group representatives of advertising agencies, and sales personnel. Also, there were department meetings concerning the progress of the company and meetings of the entire company. There was no way in which he could have conducted this business other than by being in New York City.

While in New York City, he would stay at the Parker-Smith Hotel located diagonally across the street from his office. He reserved hotel rooms on a day-to-day basis. He spent 60% to 65% of his working time on the road in locations other than New York City. In his capacity as General Sales Manager, he would meet with various customers and members of his company's sales force while he was on the road. He worked in New York City for approximately six years and indicated that he did not foresee the termination of his job within a short period of time. He planned to stay in New York City at the position of General Sales Manager indefinitely.

For the past thirty years, plaintiff has maintained a personal residence in Knoxville, Tennessee, which he visited during 1971 and 1972 on weekends and vacations. He maintained an office at his residence in Knoxville and conducted correspondence, held conferences, and made numerous telephone conversations, both local and long distance, in connection with his employer's business. By taking work home with him, he was able to catch up on his work and could "get ahead of the game" for the coming week.

During the years 1971 and 1972, plaintiff's household in Knoxville consisted of his mother and three of his four children, his older child having moved away from the residence. On an average of twelve times a year he traveled by air from New York City to Knoxville and would spend a weekend at

---

1. Other deductions were disallowed, but the parties agree that their disallowance was not properly alleged in the claim for refund and thus cannot be challenged in this action.

home and early the following week would travel by airline from his residence in Knoxville to points beyond, such as Jacksonville, Florida, New Orleans, Louisiana, or San Francisco, California. On such occasions, his employer would reimburse him for travel expenses from New York City to Knoxville and to the points beyond to which he traveled on company business. On occasions when he traveled by air from New York City to Knoxville for a weekend stay, and then returned to New York City the following week, his employer would not reimburse him for the expense of the trip.

▉ Counsel for plaintiff agrees with counsel for the defendant that the word "home" as used in Section 162(a) of the Internal Revenue Code means plaintiff's "tax home". Counsel for plaintiff asserts that since the Government does not challenge the fact that plaintiff maintains a residence in Knoxville and can thus claim Knoxville as a place of abode, Knoxville is his "tax home" because it has not been shown that he has a "tax home" elsewhere.

The Government contends that the place of abode is not considered to be one's tax home when his principal place of business is located elsewhere, and that, in order to establish Knoxville as his tax home, plaintiff must demonstrate that Knoxville was his principal place of business or that he had no identifiable place of business so as to make his abode his tax home. On this basis, the Government maintains that, even if Knoxville is plaintiff's place of abode, New York City is his principal place of business and thus is his tax home. Alternatively, the Government contends that the expenses claimed by plaintiff to be deductible were not necessary or appropriate to the development and pursuit of plaintiff's business or trade.

Section 162(a)(2), 26 U.S.C. § 162(a)(2) provides:

"*Trade or business expenses*

*(a) In General.*—There shall be allowed as a deduction all the ordinary and neces-

sary expenses paid or incurred during the taxable year in carrying on any trade or business, including— . . .

(2) Traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business . . ."

Section 262, 26 U.S.C. § 262, provides: "*Personal, living, and family expenses* Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

### *The Meaning of "Home"*

Defining the phrase "while away from home" historically has been a troublesome task. As noted by the Supreme Court in *Commissioner of Internal Revenue v. Flowers*, 326 U.S. 465, 471, 66 S.Ct. 250, 253, 90 L.Ed. 203 (1946), it is a task that "has engendered much difficulty and litigation." The Tax Court and the Commissioner have steadfastly equated the phrase with the taxpayer's principal place of business; some courts, however, have equated it with the taxpayer's "home" in the ordinary sense of the word. *See Rosenspan v. United States*, 438 F.2d 905 (2d Cir.) *cert. denied*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971). The Supreme Court has deemed it unnecessary on at least three occasions to approve or disapprove the position taken by the Tax Court and the Commissioner.[2]

In the first of these cases, *Commissioner of Internal Revenue v. Flowers, supra*, the Court set forth three conditions that must be satisfied before a traveling expense deduction can be taken:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

2. For a thorough discussion of these cases and the legislative history of § 162, see *Rosenspan v. United States, supra*.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of [that trade or business]. 326 U.S. at 470, 66 S.Ct. at 252.

The Court held that the taxpayer, a railroad lawyer who had his conventional home in Jackson, Mississippi, and his principal post of duty at the railroad's place of business in Mobile, Alabama, was not entitled to deduct food and lodging expenses incurred in Mobile or his transportation expenses between Mobile and Jackson. Finding it unnecessary to accept or reject the Commissioner's definition of "home", the Court held that the deduction was not allowable because the taxpayer had failed to satisfy the third condition, namely, the necessary relationship between the expenditures and the railroad's business was not established.

Twelve years later the Court decided *Peurifoy v. C.I.R.*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958). The Court affirmed the disallowance of board and lodging expenses of three construction workers who were employed for various periods of time in Kingston, North Carolina, but maintained their residences in other parts of the state. The Court held, in a *per curiam* opinion with three justices dissenting, that "a taxpayer is entitled to deduct unreimbursed travel expenses . . . only when they are required by the 'exigencies of business.'" *Id.* at 60, 79 S.Ct. at 105. The Court concluded that this rule required disallowance of the deductions, although the Court noted that the Tax Court had created an exception to the rule in cases involving temporary rather than indeterminate employment. *Id.* at 60–61, 79 S.Ct. 104.

Finally, in *Commissioner of Internal Revenue v. Stidger*, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), the Court upheld the Commissioner's disallowance of a deduction for food expenses incurred by a marine who was stationed in Japan. The Court of Appeals had allowed the deduction on the ground that it was not reasonable for the taxpayer to move his family residence closer to his place of business because military rules prevented the taxpayer's family from accompanying him to his post of duty. 355 F.2d 294 (9th Cir. 1965). Reversing this decision, the Court concluded that, although there was no question as to the direct connection between the expenditures and the carrying on of the employer's business, the Commissioner's interpretation of the word "home" had a firmer foundation in cases involving military taxpayers. 386 U.S. at 292, 87 S.Ct. 1065.

In *Flowers*, *Peurifoy* and *Stidger*, the Court recognized the disagreement over the proper meaning of the word "home", but found it unnecessary to resolve this conflict. In each case, the dissenting Justices were of the opinion that the word should be interpreted in accordance with its ordinary meaning.

Our review of the decisions of the Sixth Circuit Court of Appeals has led us to the conclusion that a taxpayer's "home" ordinarily is his principal place of business, but in cases in which his employment is temporary, the word "home" will be given its ordinary meaning.

In *Burns v. Gray*, 287 F.2d 698 (6th Cir. 1961), a racetrack official who maintained his residence in Williamstown, Kentucky, but was employed at various race tracks during the tax years in question, was allowed to deduct traveling expenses incurred while he was away from Williamstown. The Commissioner contended that Wheeling, West Virginia, was the taxpayer's home because he spent 155 days there during three separate intervals. Deeming this a "strained and artificial construction" of § 162, the Court stated:

"'Home,' within the meaning of the statute, does not mean the place where more of a taxpayer's employment is carried on than at another place. 'Home' is not synonymous with 'business situs.'

In the instant case, Burns's 'home,' within the intendment of the statute, is the place where he has lived for twenty-five years; where he bought a house and made a home for his wife, her parents, and himself, during the past sixteen years; and where he votes, pays his taxes, and resides between periods of employment away from such home." 287 F.2d at 700.

It is noteworthy that the Supreme Court in *Stidger, supra*, cited *Burns* for the proposition that the Sixth Circuit has not always agreed with the Commissioner's interpretation of the word "home." 386 U.S. at 291 n.9, 87 S.Ct. 1065.

Less than one year later, the Court in *Green v. C.I.R.*, 298 F.2d 890 (6th Cir. 1962), affirmed the Tax Court's holding that a taxpayer who lived 40 miles away from Dayton, Ohio, his "headquarters for business," was not entitled to deduct his expenses incurred by reason of his traveling to Dayton. The Court stated:

"Traveling connotes moving from place to place and the deductions are for transportation expense and meals and lodging while so traveling. [Plaintiff] was in Dayton all the period of time for which he claims deductions. The evidence reveals that his *business headquarters* in Dayton was *indefinite* and *indeterminate*. His situation is not within the concept of allowable deductions for traveling expense." 298 F.2d at 891 (emphasis added).

The principal place of business test was again applied in *Commissioner of Internal Revenue v. Mooneyhan*, 404 F.2d 522 (6th Cir. 1968), *cert. denied*, 394 U.S. 1001, 89 S.Ct. 1598, 22 L.Ed.2d 778 (1969). The taxpayer had accepted indefinite employment in Iran. His deduction of the amount that he spent for meals while in Iran was disallowed because:

"His principal post of duty was not Nashville, Tennessee, but Iran. The demands of his employment did not force him to travel from place to place to earn a living; his employer simply asked that he go to Iran and remain therefor as long as he liked." 404 F.2d at 528.

Particularly helpful to an interpretation of § 162 is the Court's discussion of Congress' intent in enacting that Section:

"By providing this deduction, Congress intended to help the taxpayer whose employment demands that he travel. [Citation omitted]. This taxpayer normally maintains two homes—his business residence and his usual place of abode. If he travels away for short periods of time, Congress recognized that it is not reasonable to expect him to carry his home with him; as a result, he may deduct his traveling expenses, including those incurred for meals and lodging. On the other hand, if his or his employer's business requires that he remain at another location for longer periods of time he will, under the scheme of our tax law, be expected to take his home with him." 404 F.2d at 527.

In *Ham v. United States*, 408 F.2d 671 (6th Cir. 1969), the Court affirmed the District Court's finding that a pipefitter who lived in Amelia, Ohio, but worked in Lexington, Kentucky, was not entitled to the deduction for the period of time during which his stay in Lexington was indefinite. The Court agreed with the District Court that the taxpayer's employment in Lexington was indefinite and the maintenance of his home in Amelia *was not required by the exigencies of his business but was motivated by his personal convenience.* 408 F.2d at 672 (Emphasis added).

The Court's adherence to the principal place of business test continued in *Markey v. C.I.R.*, 490 F.2d 1249 (6th Cir. 1974).[3] In that case, the Court considered the application of § 162 to situations in which a taxpayer has two places of business located a considerable distance from one another. The Court held that a determination of which locale is to be considered the tax home must be measured by objective rather

---

**3.** *See also Montgomery v. C.I.R.*, 532 F.2d 1088 (6th Cir. 1976) (a State Legislator's tax home is his principal place of business, namely, the State Capitol).

than subjective criteria, and that the taxpayer's "designation of one [place] as his abode, if different from the place *where he spends more of his time, engages in greater business activity, and derives a greater portion of his income,* is not dispositive of the question which location is his [tax] home . . . ." 490 F.2d at 1255 (emphasis added). The Court further noted:

"This Court has continued its adherence to the rule that a taxpayer's home is his principal place of business in . . . cases in which a taxpayer accepted employment either permanently or for an indefinite length of time away from the place of his usual place of abode."[4] *Id.* at 1253.

Finally, in *Brandl v. C.I.R.,* 513 F.2d 697 (6th Cir. 1975), the Court was confronted with the case of a taxpayer who spent 9 to 10 months on the road during the tax year in question and stayed at his brother's home located near his employer's Toledo, Ohio, headquarters between trips. First, the Court set forth a comprehensive summary of the law regarding § 162 deductions as it has been applied in this Circuit.[5] Then, relying on *Rosenspan v. United States,* 438 F.2d 905 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971),[6] the Court appears to have applied an "objective financial criteria" test to determine whether the taxpayer maintained a true home in Toledo or whether he was an itinerant. Concluding that the taxpayer had not met the burden of proving such criteria, the Court affirmed the Tax Court's denial of the deduction. The taxpayer did not have a true place of abode, and thus was an itinerant.

### The Location of Plaintiff's Tax Home

Applying these decisions to the facts of the present case, we are of the opinion that the controlling issue before us is whether New York was plaintiff's principal place of business during the tax years in question. Unlike the situation presented in *Brandl v. C.I.R., supra,* plaintiff is not an itinerant. Unlike the situation presented in *Burns v. Gray, supra,* plaintiff resided in New York "indefinitely". His absence from Knoxville was not only indefinite but very substantial. *Ham v. United States, supra.* New York was his central headquarters, *Green v. C.I.R., supra,* and his visits to Knoxville were only incidental to, rather than required by, his business, *id.; Ham v. United States, supra.*

In *Markey v. C.I.R., supra,* the Court recognized three factors that are relevant to a determination of a taxpayer's objective intent:

(1) The length of time spent in each location.

---

**4.** The Court indicated that its holding was in apparent disagreement with *Rosenspan v. United States,* 438 F.2d 905 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971), where it was held that the word "home" should be given its ordinary meaning. 490 F.2d 1254.

**5.** The Court stated: "Because of the almost infinite variety of the factual situations involved, the courts have not formulated a concrete definition of the term 'home' capable of universal application. In a number of cases, because of the particular facts presented, this Court has held the term to be synonymous with principal place of business. See *Markey v. Commissioner of Internal Revenue,* 490 F.2d 1249, 1253 (6th Cir. 1974); and *Commissioner of Internal Revenue v. Mooneyhan,* 404 F.2d 522, 528 (6th Cir. 1968), cert. denied 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969). This interpretation has resulted in denying deductions to persons choosing to reside at great distances from their places of employment, [*Green v. C.I.R., supra*] and to individuals working either permanently or indefinitely away from their usual residences. [*Ham v. U. S., supra; Commissioner of Internal Revenue v. Mooneyhan, supra*] Recently the same 'place of business' test was applied by this Court in determining the deductibility of travel expenses incurred by a taxpayer maintaining two places of employment [*Markey v. C.I.R., supra*]. When it was found, however, that both the place of employment and the occupation of the taxpayer were temporary, this Court treated the term 'home' as being synonymous with the taxpayer's abode or place of residence" [*Burns v. Gray, supra*]. (footnotes omitted) 513 F.2d at 699.

**6.** Compare the Court's approval of *Rosenspan* with *Markey v. C.I.R., supra* Note 3.

(2) The degree of the taxpayer's business activity at each location.

(3) The relative proportion of income derived from each place. 490 F.2d at 1252, 1255.

[4] Having considered these factors, the Court is of the opinion that New York is plaintiff's principal place of business and thus is his tax home.

The facts, as previously set forth, demonstrate that plaintiff spent a significantly greater amount of time in New York City than any other location. His visits to Knoxville were limited to vacations and certain weekends in which he either visited his family or used Knoxville as a stop-off point while traveling to other destinations. The remainder of his time was spent on the road monitoring and organizing the company's sales force.

New York City clearly was plaintiff's headquarters during the years in question. He appears to have been a liaison between his company's sales force and its home office in New York City. As such, his activities involved more than those of a traveling salesman with no centralized business location other than his residence. Plaintiff stated that there was no way in which he could have conducted his business other than by having been in New York City. Company meetings were held there, and employees who worked under plaintiff's direction met with him in New York City to discuss problems connected with sales and distribution. Plaintiff was provided with a room or company office in New York City, and had two secretaries who worked for him while he was there and acted as a clearinghouse for his telephone calls while he was on the road. Because plaintiff did not foresee the termination of his job as General Sales Manager within a short period of time, he "planned to stay in New York City . . . indefinitely."

In view of the fact that plaintiff's activities were more concentrated in New York City than any other locale, it would appear that these activities generated more income than was generated by his activities in any other place.

The facts further demonstrate that plaintiff was not required by his employer to maintain living quarters in both New York City and Knoxville. The added costs were incurred by reason of his desire to maintain a home in Knoxville while working at his principal post of duty in New York City. As such, they were motivated by his personal conveniences and necessities rather than the exigencies of business. *Commissioner of Internal Revenue v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946); *Peurifoy v. Commissioner of Internal Revenue*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); 26 U.S.C. § 262.

For the foregoing reasons, it is ORDERED that this action be, and the same hereby is, dismissed.