JAMES R. SHORE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shore v. Commissioner
Docket No. 31001-88
United States Tax Court
T.C. Memo 1990-272; 1990 Tax Ct. Memo LEXIS 290; 59 T.C.M. (CCH) 762; T.C.M. (RIA) 90272; May 31, 1990, Filed *290 Decision will be entered under Rule 155. James R. Shore, pro se. Mark I. Siegel, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent, in his notice of deficiency issued on September 14, 1988, determined the following deficiencies in, and additions to, petitioner's 1984 and 1985 Federal income tax: Section
Section
Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
1984
$ 8,045.24
$ 402.26 *
$ 2,011.31
1985
$ 8,551.46
$ 427.57 *
$ 2,137.87 The deficiencies determined by respondent are due in large part to the disallowance of business expenses attributable to petitioner in 1984 and 1985. After concessions, the issues for our decision are (1) whether petitioner was "away from home" within the meaning of section 162(a)(2) and therefore entitled to deductions for travel expenses (including meals, lodging, and automobile expenses) as claimed on his 1984 *291 and 1985 tax returns; (2) whether petitioner is entitled to claim a rental deduction of $ 3,000 for storage of documents in 1984 and 1985 respectively; (3) whether petitioner is liable for additions to tax due to negligence under section 6653(a)(1) and (2); and (4) whether petitioner is liable for additions to tax under 6661 for substantial understatement of his income tax for the years 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed in this case and during the years in issue petitioner James R. Shore resided in Belding, Michigan (hereinafter Belding), located approximately 150 miles from Detroit, Michigan (hereinafter Detroit). Petitioner first moved to Belding as a child in 1949 when his parents bought the Gambles dime store. After finishing high school in Belding, he joined the military in 1954 and moved out of town. In approximately 1969, petitioner moved back to Belding. While continuing to reside in Belding, he worked for one year as a draftsman in Greenville, Michigan; for ten years as a furniture *292 designer in Grand Rapids, Michigan; and for six years as project engineer with an industrial equipment company in Belding. Petitioner then became a self-employed industrial designer drawing his clients from Detroit, Grand Rapids, and Belding. In 1982, petitioner began working steadily as a freelance automotive designer in the greater Detroit metropolitan area exclusively. Although Belding is 150 miles away from Detroit, petitioner continued to maintain his residence in Belding. He did, however, rent an apartment in Detroit for his use on weekdays. He drove back to Belding nearly every weekend. As an automotive designer, petitioner worked for a series of contract companies who hired him to design a wide range of complex vehicle parts for well-known car manufacturers including Cadillac, Ford, and Isuzu. By 1984, petitioner was a skilled designer having had experience designing such things as exhaust and fresh air cooling systems, fuel filters, power steering mechanisms, and the hydraulics of a military tank. It is customary for freelance automotive designers to be laid off when their particular design projects are completed. The automobile design assignments petitioner worked *293 on from June 1982 to December 1985 generally lasted between 2 to 20 months. His employment history since 1982 is shown as follows. Employer
Beginning
End
Wages
Pioneer Engineering,
Warren, MI **
June 1982
Nov. 1983
$ 67,882
Engineering Tech,
Troy, MI **
Nov. 1983
Jan. 1984
$ 14,280
Modern Engineering,
Troy, MI
Feb. 1984
April 1984
$  7,463
Troy Design,
Troy, MI
April 1984
Dec. 1985
$ 67,057
Sheller Globe,
Detroit, MI
Dec. 1985
Dec. 1986
$ 96,335
Aero Detroit,
Troy, MI
Dec. 1986
May 1987
$  2,674
Pioneer Engineering,
Warren, MI
May 1987
Feb. 1990
-- On his 1984 tax return, petitioner claimed a travel deduction of $ 11,508 for temporary living expenses in Detroit (274 nights at $ 42.00 per night), and car and truck expenses of $ 3,753.70. On his 1985 tax return, petitioner claimed a travel deduction of $ 11,088 for temporary living expenses (264 nights at $ 42 per night), and car and truck expenses of $ 3,700. At no time has petitioner presented any documentation to support these automobile and living expense deductions. On his 1984 and 1985 income tax returns, petitioner deducted $ 3,000 for the rent of a home "office" *294 ($ 250 per month) in which petitioner stored design blueprints and other work-related documents. Petitioner's purported "office" is located in an unfinished room adjoining his basement. The room is small, measuring five feet by ten feet. At trial petitioner presented monthly rent receipts for the $ 3,000 annual office deduction and two snapshots. The handwritten receipts were dated, signed by the purported landlord, and inscribed with various memorandums such as "Rent-January," "March Occupancy," "May Office Rental," and "storage space." OPINION Petitioner seeks to deduct as ordinary and necessary business expenses the amounts he spent in driving between Belding, Michigan and Detroit on weekends, as well the living expenses he incurred while working in the Detroit area in 1984 and 1985. Section 162(a)(2) allows a deduction for travel expenses, including meals and lodging which are not lavish or extravagant, "while away from home in the pursuit of a trade or business." The purpose behind the deduction is to allow a taxpayer relief from the additional or duplicate expenses incurred while away from home on business. Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. *295 a Memorandum Opinion of this Court; Bochner v. Commissioner, 67 T.C. 824, 827 (1977). Thus, one of the conditions that must be satisfied before a deduction is allowed for travel expenses under section 162(a)(2) is that the taxpayer must show that they were incurred "while away from home." Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946). This Court has consistently held that for purposes of section 162(a)(2), "home" means the taxpayer's principal place of business or employment. Michaels v. Commissioner, 53 T.C. 269, 273 (1969); Whitaker v. Commissioner, 24 T.C. 750 (1955). It is well established that if a taxpayer elects for personal reasons to reside far from his place of employment, the expense in driving to and from work and the cost of meals and lodging at his place of employment are nondeductible personal expenses. Sec. 262. Similar expenses incurred while employed away from home temporarily are deductible traveling expenses within the meaning of section 162(a)(2). It would be unreasonable to expect petitioner to move his residence to a temporary work location. Tucker v. Commssioner, 55 T.C. 783 (1971). However, if temporary employment ripens *296 into employment of substantial or indefinite duration, the situs of such employment becomes petitioner's "tax home" for purposes of the statute, and the travel expenses incurred there are not deductible. Commissioner v. Peurifoy, 254 F.2d 483 (4th Cir. 1957), affd. 358 U.S. 59 (1958); Norwood v. Commissioner, 66 T.C. 467, 470 (1976). Thus, the first issue for our decision is whether petitioner has carried his burden of proving that his employment in the metropolitan area of Detroit during the years 1984 and 1985 was "temporary" as opposed to "indefinite." Rule 142(a). Petitioner contends that the work he did on each design project constituted a separate and distinct temporary job and thus his "home" for tax purposes was in Belding, Michigan, throughout the years in issue. In support of his position, petitioner maintains that prior to and during the years in issue he worked for a series of different companies on separate, "short-term" employment contracts, all of which lasted only 2 to 20 months. In 1984 and 1985 alone, petitioner worked under four different design contracts for four different companies -- Engineering Tech., Modern Engineering, Troy Design, and Sheller Globe. We *297 do not agree that petitioner's employment in Detroit was temporary. The fact that petitioner worked for four different companies in Detroit within two years is not determinative of whether his employment in Detroit was temporary. Instead, the proper inquiry is whether petitioner's employment in the Detroit area should have been expected to continue indefinitely so that "it would be reasonable under the circumstances * * * [for petitioner] to move to the location of his new employment. " Markey v. Commissioner, 490 F.2d 1249, 1253 (6th Cir. 1974); Commissioner v. Mooneyhan, 404 F.2d 522, 527 (6th Cir. 1968); Tucker v. Commissioner, supra.To qualify for his claimed business deductions under the temporary-indefinite rule, petitioner must prove that it was reasonable under the circumstances to have expected at the beginning of each taxable year that his employment in Detroit would be temporary. Commissioner v. Peurifoy, supra; Rule 142(a). We are persuaded from the record that petitioner, at the beginning of 1984, and at the beginning of 1985, should have reasonably expected to continue working in Detroit as an automotive designer indefinitely. It is clear from his own resume and the *298 stipulation of facts that petitioner had worked steadily in the Detroit area for at least 17 months just prior to 1984. Moreover, petitioner asserts that as he is a valued employee and well-qualified designer with years of experience in design, that his jobs often entail more than one project, and that they sometimes last longer than the average. In light of the facts that petitioner was a well-paid (and apparently highly valued) expert in automotive design and that he was working in a major manufacturing center of the American car industry, we find that it was unreasonable for him to expect that his design assignments in the Detroit area would not continue to be forthcoming. Indeed, petitioner has in fact found steady work in Detroit since 1982. He indicated at trial that he presently expected to work in Detroit until he decided to retire. We also note that petitioner had no real possibilities of finding work as an automotive designer in Belding, an outlying town with a population of approximately 5,000. Petitioner testified that prior to beginning work in Detroit he had difficulty making a living in Belding as a self-employed contract designer and had to look outside of Belding *299 for clients. Petitioner also indicated that he had grown fond of Belding in his boyhood, and that he chose to live there because it was a pleasant, bedroom community. Although petitioner had worked in Belding prior to becoming a freelance automotive designer in Detroit, this connection with his hometown is insufficient, in and of itself, to justify designating Belding as petitioner's tax home. To hold otherwise would place petitioner's home where his heart lies, rather than where his work is, and would render section 162(a)(2) a vehicle by which to deduct the full spectrum of one's personal and living expenses. Bochner v. Commissioner , supra.We find therefore, that Detroit was petitioner's "tax home" in 1984 and 1985, and that his living expenses in Detroit and the cost of his transportation to Belding on weekends were nondeductible personal expenses under section 162(a)(2). We further note that petitioner failed to substantiate any of his claimed travel expenses by keeping receipts and contemporaneous records. Secs. 162(a)(2), 6001. We next consider whether petitioner is entitled to the deduction of $ 3,000 that he claimed as an "office expense" on both his 1984 and 1985 tax *300 returns. Petitioner failed to present any evidence to establish that the small basement room in his Belding residence was the principal place of his business. Sec. 280A(a). Petitioner failed to offer any evidence to show that maintenance of a home office was "essential to his business," that he "spends substantial time [working] there," and that he had "no other location available to perform the office functions of the business." Soliman v. Commissioner, 94 T.C. 20, 29 (1990). Section 280A(c)(2) provides an exception for certain storage use to the general disallowance of deductions in connection with the business use of a residence. However, petitioner does not meet the requirements since his residence is not the sole location of his business and his blueprints are not being held as inventory. Sec. 280A(c)(2). Accordingly, we find that petitioner is not entitled to deduct any part of the basement rental as a home office expense. We next consider whether petitioner is liable for the additions to tax due to negligence under section 6653(a)(1) and (2). Section 6653(a)(1) provides for an addition to tax equal to five percent of the total underpayment if any part of the underpayment *301 is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence or intentional disregard of the rules or regulations accruing from the date the underpayment was due (without regard to any extension) to the date of the assessment, or if earlier, the date of the payment of the tax. Negligence is defined as a failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). See Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Petitioner bears the burden of proving that the underpayment was not due to negligence or intentional disregard of rules or regulations. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972); Rule 142(a). We note that although petitioner was aware that travel expenses are deductible under section 162(a) only if they are incurred "away from home," he failed to keep any records to substantiate *302 his deductions as required by section 6001. His failure to recognize that without even minimal supporting documentation he would not be entitled to the benefit of travel and living expense deductions under section 162(a) shows a lack of due care. Sec. 6001. Accordingly, we find that except for the portion of the understatement attributable to petitioner's disallowed deductions for basement storage, for which he submitted all receipts and two photographs, petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for negligence. The final issue for consideration is whether petitioner is liable for an addition to tax under section 6661(a) for substantial understatement of income tax liability. Section 6661(a) provides for an addition to tax of 25 percent of the amount of the underpayment of tax attributable to a substantial understatement of income tax. A substantial understatement of tax exists if the understatement exceeds the greater of $ 5,000 or ten percent of the tax required to be shown on the return for the taxable year in issue. Sec. 6661(b)(1)(A). Where an item is not attributable to a tax shelter, the understatement may be reduced if the taxpayer's *303 treatment of the item was based on substantial authority or if the relevant facts affecting the item's tax treatment were adequately disclosed on the return or in a statement attached thereto. Secs. 6661(b)(2)(B)(i) and (ii); 6661(b)(2)(C). See Schirmer v. Commissioner, 89 T.C. 277, 283-284 (1987). Respondent has determined, and we agree, that petitioner substantially understated his income tax on his 1984 and 1985 tax returns. Petitioner has not claimed that substantial authority exists for his understatement of tax, and we find that he did not adequately disclose relevant facts on either his return or in an attached statement that might have explained whether he acted reasonably in understating his income. Therefore, petitioner is liable for the additions to tax under section 6661(a). To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. * Fifty percent interest on the portion of the deficiency attributable to negligence.↩
**. (Warren, Michigan and Troy, Michigan are both located within the greater Detroit metropolitan area.↩