ROBERT W. TESKEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 63852.    Filed May 29, 1958.

*Thomas J. Beddow, Esq.*, for the petitioner.
*Neil J. O'Brien, Esq.*, for the respondent.

The Commissioner has determined deficiencies in petitioner's income tax for the years 1953 and 1954 in the respective amounts of $2,366.91 and $1,278.04. The explanation in the deficiency notice of the deficiency for 1953 is as follows:

You have failed to show that for the year 1953 you qualified as a bona fide resident of a foreign country, within the meaning of Section 116 (a) of the Internal Revenue Code, for an uninterrupted period which includes an entire taxable year. You have also failed to show that your foreign employment was part of a period of 18 consecutive months during which you were present in a foreign country or countries for at least 510 full days in such period. "Therefore, your wages of $10,049.76 constitute taxable income."

The deficiency for 1954 is also due to the same kind of adjustment, except in smaller amount, and it is explained in the deficiency notice in a similar manner.

The petitioner assigns error as to the determination of the Commissioner for each of the taxable years and contends his compensation was exempt from taxation.

At the hearing, respondent's counsel stated that the Commissioner no longer contended that petitioner did not reside in a foreign country for the length of time required by the statute but that he does contend that petitioner received his compensation from the United States or one of its agencies and that hence the income of petitioner is not exempt under the statutes relied upon. That is the only issue presented for our decision.

There is no dispute as to the amount of compensation which petitioner received in each of the taxable years.

### FINDINGS OF FACT.

Most of the facts have been stipulated and the stipulated facts are incorporated herein by this reference.

Petitioner Robert W. Teskey resides at Bethesda, Maryland, and his income tax returns for the years 1953 and 1954 were filed with the district director of internal revenue at Baltimore, Maryland.

Between January 16, 1952, and February 2, 1954, petitioner was a seaman in the Merchant Marine Service of the United States serving as radio operator aboard the motor vessel *Rose Knot*. *Rose Knot* was owned by the United States of America, represented by the Maritime Administration, Department of Commerce. The United States of America (acting by and through the Director, National Shipping Authority of the Maritime Administration) on March 19, 1951, entered into General Agency Agreement MA–56–GAA with Pacific-Atlantic S. S. Co., sometimes hereinafter referred to as Pacific-Atlantic.

Under MA–56–GAA the United States appointed Pacific-Atlantic as its agent, and not as an independent contractor, to manage and conduct the business of the vessels assigned to it for the business and account of the United States and in accordance with the directions, orders, supervision, and inspection as the United States might from time to time prescribe.

The Director, National Shipping Authority of the Maritime Administration, authorized assignment of *Rose Knot* to Pacific-Atlantic. The itinerary of *Rose Knot* was directed by the United States (acting through the Military Sea Transportation Service). *Rose Knot* was used in the shuttle service between ports in Japan and ports in Korea during the Korean War emergency. *Rose Knot* was used to transport dry commodities such as tanks, vehicles, and ammunition between Japan and Korea.

By the terms of the General Agency Agreement, Pacific-Atlantic was required to procure for *Rose Knot* a master, who was to be an agent and employee of the United States and who was to exercise full control with respect to the manning, navigation, and management of the vessel. Pacific-Atlantic was further required to procure through the usual channels, and make available to the master for engagement, officers and men required by the master to fill the complement of the vessel. The agreement did not carry any provision which said that the officers and crew required to fill the complement of the vessel would be employees of the United States. The officers and crew were subject only to the orders of the master.

On or about January 16, 1952, petitioner was procured out of union hiring hall by Pacific-Atlantic, signed shipping articles of agreement, and was thereupon engaged by the master of *Rose Knot* for

service as its radio operator. The terms, pay provisions, and conditions of petitioner's employment were fixed by and according to the union agreement with Pacific-Atlantic.

Petitioner signed subsequent shipping articles of agreement for service aboard *Rose Knot* as its radio operator on October 23, 1952, and July 18, 1953, which articles extended his employment to approximately February 2, 1954.

*Rose Knot* sailed from Portland, Oregon, on January 22, 1952, and arrived at Yokohama, Japan, on February 18, 1952. *Rose Knot* sailed from Yokohama, Japan, on January 15, 1954, and arrived at Portland, Oregon, on February 1, 1954. Between February 18, 1952, and January 15, 1954, *Rose Knot* was in shuttle service between ports in Japan and ports in Korea, except for a trip from Yokohama, Japan, to Naha, Okinawa, and return, covering the period December 11, 1953, to December 20, 1953.

While engaged as radio operator aboard *Rose Knot*, petitioner was paid for his services either by check of Pacific-Atlantic or in cash from funds provided therefor by the United States. The service agreement provided that the United States would advance funds to Pacific-Atlantic to provide for the expenses incurred by it in operating the vessel, and that Pacific-Atlantic would be paid fair and reasonable compensation for its services, including in such compensation administration and general expense, advertising expense, taxes, and other indirect expenses.

From payments made to petitioner, Pacific-Atlantic withheld Federal unemployment, social security, and Federal income taxes. Nothing was withheld from such compensation in respect of Federal retirement benefits. Pacific-Atlantic paid unemployment taxes on petitioner's compensation, as well as any pension or welfare fund contributions required by Pacific-Atlantic's collective bargaining agreements. From a revolving fund established by Pub. L. No. 45, 82d Cong., 1st Sess., the United States provided the funds which it placed in a special and joint bank account from which Pacific-Atlantic could make withdrawals for the purposes designated in the General Agency Agreement. The General Agency Agreement required the agent, Pacific-Atlantic, to account for all moneys disbursed. The agreement required the agent to keep books and records (which were to be the property of the United States) and to file financial statements according to the directions of the United States.

The shipping articles stated that the United States or one of its agencies was the owner of *Rose Knot*.

The moneys used to pay the wages earned by the petitioner while engaged as radio operator aboard the *Rose Knot* belonged to and were the funds of the United States or an agency thereof immediately prior

to payment to petitioner. The wages earned by petitioner while engaged as radio operator aboard the *Rose Knot* were amounts paid by the United States or an agency thereof.

OPINION.

BLACK, *Judge:* For the taxable year 1953, petitioner claims that wages received from Pacific-Atlantic in the amount of $10,049.76 are excludible from gross income under section 116 (a) (2), I. R. C. 1939. For the taxable year 1954, petitioner claims that wages received from Pacific-Atlantic in the amount of $6,307.29 are excludible from gross income under section 911 (a) (2), I. R. C. 1954.

Respondent in his answer denied petitioner's claim generally and specifically alleged that petitioner's wages were paid by the United States or an agency thereof.

The sections of the statute above referred to, in substance, provide that income earned abroad by a United States citizen, who is present in a foreign country or countries for at least 17 months out of 18 consecutive months, shall be excluded from gross income. The exclusionary provision does not extend to "amounts paid by the United States or any agency thereof."

The notice of deficiency determined that sections 116 (a) (2) of the 1939 Code and 911 (a) (2) of the 1954 Code were not applicable because petitioner was not present in a foreign country or countries for at least 17 months out of 18 consecutive months. This position has, however, now been abandoned by respondent.

In his answer to the petition filed, respondent, by way of an affirmative allegation, alleged that the compensation earned abroad by petitioner, during his presence in a foreign country or countries for 17 months out of any period of 18 consecutive months, was paid to him by the National Shipping Authority, Maritime Administration, Department of Commerce, an agency of the United States. Accordingly, the only issue in this case is whether the benefits of sections 116 (a) (2) of the 1939 Code and 911 (a) (2) of the 1954 Code are to be denied to the petitioner on the ground that the compensation reflected in his 1953 and 1954 returns represented "amounts paid by the United States or any agency thereof."

Both parties in their briefs discuss at considerable length the question as to upon whom the burden of proof lies. Petitioner takes the position that the burden of proof lies upon the Commissioner because he shifted his grounds as originally stated in his deficiency notice to another ground as alleged in his answer, to wit, that the compensation received by petitioner was paid to him by "the United States or any agency thereof." The Commissioner argues that the changing of his ground for the disallowance of the exemption from that of insufficient

time spent abroad in earning the compensation, to that of the ground that petitioner's compensation was paid to him by "the United States or any agency thereof" has no effect on the burden of proof required in the case. Respondent cites many cases in support of his position. However, we think it is unnecessary to take up any time in discussing in this case upon whom the burden of proof lies.

The facts have been very fully stipulated, except as to one or two minor matters upon which oral testimony was heard. So far as we can see there is no lack of facts to inform us fully as to how and by whom petitioner was employed and by whom he was paid. The facts, as we see them, are really not in dispute. Our task is to give consideration to these facts and determine whether petitioner was paid his compensation by the "United States or any agency thereof." If he was so paid, then he does not get the exemption provided by the statutes upon which he relies. If he was not paid by the "United States or any agency thereof" within the meaning of the applicable statutes, then the amounts of his compensation for both taxable years are exempt from taxation under the statutes relied upon.

We think that under the law and the facts the issue must be decided for the Commissioner. In Rev. Rul. 58–4, 58–1 C. B. 268, the very question here involved was fully considered and ruled upon. The facts upon which that ruling was based are essentially the same as the facts in the instant case. This is shown by quoting from the ruling, page 269, as follows:

From January 26, 1954, to July 24, 1955, inclusive, a total of 545 days, the taxpayer lived in Korea and was employed on a shuttle ship which sailed between Korea and Japan. During such period the taxpayer was not within the United States or any possession thereof. The United States, represented by the Maritime Administration, was owner, or owner for the time being, of the ship on which the taxpayer was employed. * * *

The instant agreement appointed a shipping line as general agent under the contract and defined the duties of the general agent. Among these duties was the procurement of a master who should be an agent and an employee of the United States. The general agent was required to procure and make available to the master, for engagement by him, the officers and men required by him to fill the complement of the vessel. This personnel was procured through usual channels and in accordance with the customary practices of commercial operators and upon the terms and conditions of the general agent's collective bargaining agreements, if any. All such personnel were paid by the general agent in the customary manner with funds provided by the United States for performing, procuring, or supplying services, and for paying all crew expenditures. Operating control of the ship was maintained by the United States through the ship's master.

Upon these facts it was ruled as follows, p. 270:

Accordingly, it is held that wages paid by a private shipping line as general agent of the United States, from funds provided for that purpose by the United

States, to a citizen of the United States as compensation for services performed on a vessel owned, or owned for the time being, by an agency of the United States and operated by the United States, are not excludable from gross income under the provisions of section 911 (a) (2) of the Code even though the employee may be physically present in a foreign country or countries for 510 full days or more of an 18 consecutive month period to which such wages are attributable. * * *

It will be noted that the foregoing ruling was as to the applicability of section 911 (a) (2) of the 1954 Code. That section is applicable to one of the years here in question, the year 1954. Section 116 (a) (2) of the 1939 Code is applicable to the year 1953. However, it is essentially the same as section 911 (a) (2) of the 1954 Code and the foregoing internal revenue ruling is equally applicable to the taxable year 1953, as it is to 1954. There is no dispute between the parties on that score.

Petitioner, however, contends that the Commissioner's ruling in Rev. Rul. 58–4, 58–1 C. B. 268, is not correct and should not be followed. Obviously, if this ruling is not correct, it should not be followed. It is well recognized that the Commissioner has no authority to make a ruling which is contrary to an act of Congress and if he does publish such a ruling the courts will not follow it. However, we do not believe that the internal revenue ruling to which we have made reference above is erroneous. It seems to us that it is a correct application of the law to the facts.

Since the United States through the Department of Commerce, Maritime Administration, National Shipping Authority, in satisfaction of its obligation paid wages to the petitioner, albeit payment was made by the United States through its agent, Pacific-Atlantic, the amounts thus received by petitioner were paid by "the United States or any agency thereof," and petitioner is, therefore, not entitled to the exemption-exclusion provided by the sections of the statutes to which reference has already been made.

Petitioner strongly maintains that he was never at any time an employee of the United States. Even if that fact be assumed to be correct, we do not think it would change the result. The sections of the statutes which are here applicable except from the exemptions provided, amounts paid by "the United States or any agency thereof." The language is broad enough to exclude from the exemption provided in the statutes, amounts paid by the "United States or any agency thereof," even though the taxpayer to whom the payment is made is not, strictly speaking, an employee of the United States.

The crucial question is, was the payment made by "the United States or any agency thereof"? Cf. *Leif J. Sverdrup*, 14 T. C. 859, 866 (1950). In the *Sverdrup* case, we held that the sum of $36,279.30 received by the taxpayer as a member of a contracting firm was not

exempt under section 116 (a) of the 1939 Code, even though the taxpayer was not an employee of the United States Government. The important thing was that the $36,279.30 was paid by the United States Government. Among other things, we said:

It is significant that the words actually adopted in the amendment were broad. Neither the word "employees" nor the word "compensation" was used. Instead, the amendment as passed reads: "except *amounts paid* by the United States or any agency thereof." (Italics supplied.) Since the sum of $36,279.30 here in question was such an amount, we hold that respondent properly determined that that amount was not excludable from petitioner's gross income in 1942.

We hold that the payments here in question were paid by "the United States or any agency thereof" and are not exempt from taxation. The Commissioner is sustained.

*Decision will be entered for the respondent.*