OPINION. Raum, Judge: 1. Petitioner’s claim to exclusion from gross income rests solely upon section 911(a) (2) of the 1954 Code.[1] There is no contention before us that the amounts received by petitioner were excludible under section 117 pertaining to “Scholarships and Fellowship Grants.” See Rev. Rui. 61-65, 1961-1 C.B. 17. The grants to petitioner related to his activities as a lecturer, and he seeks favored tax treatment only under section 911(a) (2) dealing with income earned outside the United States where the taxpayer “during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period.” Petitioner complied with the requirements of presence in a foreign country, and the only ground relied upon by the Commissioner to deny him the benefits of section 911(a) (2) is the parenthetical provision making section 911 (a) (2) inapplicable in the case of “amounts paid by the United States or an agency thereof.” The question before us therefore is whether the amounts received by petitioner as a Fulbright lecturer were “paid by the United States or an agency thereof.” Petitioner makes an extended and persuasive argument that he was not an employee of the United States or any agency thereof. But that is not the true issue. Assuming that he was not such an employee there still remains the question whether the amounts were paid to him by the United States or one of its agencies. If they were so paid then the statutory exclusion by its very terms is inapplicable. To be sure, the payments received by petitioner as a Fulbright lecturer were not paid to him directly by the United States. They were paid in inconvertible Japanese yen by the United States Educational Commission in Japan, and the real question before us is therefore reduced to whether the Commission was in substance acting as a disbursing agent for the United States or an agency thereof in paying petitioner. Cf. Robert W. Teskey, 30 T.C. 456. In order to resolve this question it is necessary to examine the statutory basis of the Fulbright educational exchange program in general and the creation of the United States Educational Commission in Japan in particular. The Fulbright program was begun in 1947 by an amendment[2] to the Surplus Property Act of 1944[3] which enabled the Secretary of State of the United States to enter into agreements with foreign countries whereby money owed to the United States for surplus property purchased by the foreign governments would be used to finance an educational exchange program between the United States and the foreign countries.[4] Pursuant to this enabling legislation on August 28, 1951, the United States and Japan entered into an agreement which established the United States Educational Commission in Japan to facilitate the administration of a program of educational exchange between the United States and Japan. Portions of this agreement are set forth in our findings. For present purposes, it should be noted that section 8 of this agreement provides that the funds for the program are to be paid by Japan in currency of the Government of Japan to “an account of the Treasurer of the United States” and that the Secretary of State of the United States then is to make available to the Commission such funds as are required to meet the budget of the program. Also noteworthy are the provisions in section 2 of the agreement that the treasurer of the Commission shall be appointed subject to the approval of the Secretary of State of the United States, that the Commission’s funds shall be deposited in a depository or depositories designated by the Secretary of State, that there shall be periodic audits of the Commission’s accounts by auditors selected by the Secretary of State, and the provision in section 3 that the annual budget of the Commission is subject to the approval of the Secretary of State. We think it plain from these provisions in the agreement between the United States and Japan that it is the intent of that agreement that the funds which are used to finance the operations of the United States Educational Commission in Japan, although in Japanese currency, are funds owned and supplied by the Government of the United States which before transferring such funds to the Commission received them from the Government of Japan in payment for surplus property sold to Japan. The United States retained substantial control over the use of these funds, not only through various powers given the Secretary of State in the agreement with Japan, but also by selecting the persons from the United States, such as petitioner, who become eligible to receive the benefit of a portion of the funds. Thus, although the United States Educational Commission in Japan may technically be a binational organization in concept and organization, as contended by petitioner, and not, strictly speaking, an agency or instrumentality of the United States Government, we conclude that the Commission is financed by the United States and that funds which it disburses are funds of the United States.[5] It follows that funds paid to the petitioner by the United States Educational Commission in Japan were in terms of true ownership and control paid by or on behalf of the United States for purposes of section 911 of the 1954 Code, supra. Cf. Erlandson v. Commissioner, 277 F. 2d 70 (C.A. 9), affirming a Memorandum Opinion of this Court; Robert W. Teskey, 30 T.C. 456. In this regard we think it significant that petitioner was notified of his selection as a Fulbright lecturer (and of the renewal of his award) on a State Department form entitled a “United States Government Grant Authorization” accompanied by separate “Terms and Conditions of United States Government Grant.” Based on all the evidence of record we are convinced that the Fulbright awards received by the petitioner were indeed grants from the United States Government which were in fact paid by the United States through the United States Educational Commission in Japan. As previously noted, petitioner argues in the main that as a Fulbright lecturer he was not an employee of the United States and was not entitled to any of the benefits of Government employment. As a result he contends that the statutory exception for amounts paid by the United States or an agency thereof should not apply. However, as this Court pointed out in Robert W. Teskey, supra at 461-462, the statute does not require an employer-employee relationship. Cf. Erlandson v. Commissioner, supra at 72; Leif J. Sverdrup, 14 T.C. 859, 865-866. All that is required is that petitioner be paid by the United States or an agency thereof. Since we hold petitioner was so paid, the question whether petitioner as a Fulbright lecturer was an employee of the United States becomes moot.[6] Finally, we think that Krichbaum v. United States, 138 F. Supp. 515 (E.D. Tenn.), cited by petitioners, is also distinguishable. In that case it was found that the funds used to pay the taxpayer had been borrowed by the Government of Ethiopia from the International Bank and that the United States Bureau of Public Koads paid the taxpayer for Ethiopia as paymaster and not payor. In the present case, if there is a paymaster involved, it is the United States Educational Commission in Japan; we have found that the United States is the payor. 2. We now turn to petitioner’s alternative position. Petitioner argues that while a Fulbright lecturer he was traveling “away from home” in the pursuit of his trade or profession of teaching within the meaning of section 162(a) (2) of the 1954 Code[7] and, thus, that he is entitled to deduct his “traveling expenses (including the entire amount expended for meals and lodging) ” while in J apan. Respondent’s position is that the cited section is inapplicable because petitioner’s work in Japan was of such duration and in such circumstances that Japan was his tax residence during 1956 and 1957. We think petitioner qualifies for the disputed deduction. Petitioner is an American college professor by trade or profession. Pie went to Japan in pursuit of this calling as a Fulbright lecturer. By its very nature, the Fulbright grant was temporary, since it was for a fixed period of 10 months. Although petitioner in fact received a renewal of that grant for 10 months of the succeeding academic year and also an extension of his original grant for a brief period so that there would be no gap, and thus remained in J apan some 21 months, there is no indication in the record that petitioner at any time intended to remain in Japan indefinitely or permanently. But for the facts that petitioner’s family accompanied him to Japan and that petitioner changed the location of his teaching position back in the United States while in Japan, we think it doubtful that respondent would ever have contended that petitioner’s tax home was other than in the United States.[8] We think the presence of petitioner’s family in Japan with him in no way detracts from the temporary status of his Fulbright grant in Japan. Since this grant was payable only in inconvertible Japanese currency, petitioner would have found it difficult if not impossible to support his family except in Japan. Also, the added fact that petitioners retained the ownership of their home in Seattle when they went to Japan is some evidence that they assumed that they would return to Seattle upon the completion of petitioner’s temporary teaching assignment in Japan. Respondent argues that even if petitioner is considered “away from home” when he began his Fulbright lectureship while on a sabbatical leave from the University of Washington, he should not be considered so after he resigned from the faculty of the University of Washington and thereby no longer had a permanent teaching position in the United States. However, we think petitioner’s change in universities in the United States in no way changed the temporary nature of his presence in Japan as a Fulbright lecturer. While the record is not clear regarding petitioner’s reasons for resigning from the University of Washington, there is no indication that petitioner took this action with any intent to remain in Japan on a permanent or indefinite basis. We know petitioner was offered and accepted a teaching position at the University of Michigan while he was still in Japan and that he went to the University of Michigan after his return from Japan in 1957. We conclude, therefore, that petitioner’s change in positions in the United States had no effect on his “away from home” status while in Japan, that he continued to be temporarily away from the United States as a Fulbright lecturer, that petitioner’s tax residence remained in the United States in 1956 and 1957, and that during the entire time he was in Japan he incurred deductible “traveling expenses” under section 162(a) (2),supra. There remains the question of the amount of the deduction to which petitioner is entitled in 1956 and 1957. The parties have stipulated the average monthly expenses incurred by petitioner and his family while in Japan. Although the problem of allocating to petitioner the amounts properly chargeable to him is by no means free from difficulty, we have nevertheless used our best judgment and have made findings of fact based upon our evaluation of the stipulated facts in the light of testimony given at the trial. We have accordingly found that the deductible expenses incurred by petitioner were in the amount of $4,800 in 1956 and $2,500 in 1957. Decision will be entered under Rule 50. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule. — The following Items shaU not be Included In gross Income and shall be exempt from taxation under this subtitle: [[Image here]] (2) Presence in foreign country for it months. — .In the case of an Individual citizen of the United States, who during any period of 18 consecutive months Is present In a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or an agency thereof) If such amounts constitute earned income (as defined in subsection (b)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this paragraph. If the 18-month period includes the entire taxable year, the amount excluded under this paragraph for such taxable year shall not exceed $20,000. If the 18-month period does not include the entire taxable year, the amount excluded under this paragraph for such taxable year shall not exceed .an amount which bears the same ratio to $20,000 as the number of days in the part of the taxable year within the 18-month period bears to the total number of days in such year. Pub. L. 584, 79th Cong., 2d Sess., 60 Stat. 754. October 3, 1944, ch. 479, 78th Cong., 2d Sess., 58 Stat. 765. The legislation has since been amended to broaden its scope to cover other moneys owed the United States by foreign governments under legislation such as the Economic Cooperation Act of 1948 and the Mutual Security Act of 1954. See 50 U.S.C. App. sec. 1641. as amended. In Shirley Duncan Hudson, 20 T.C. 926, the governmental status of the United States Educational Foundation in China (also a part of the Fulbright program) was not in issue. In that case which involved a Foundation employee rather than a Fulbright grantee, it was stipulated that the Foundation was an agency of the United States. Our finding of fact based on this stipulation is not controlling in the instant case. Petitioner suggests that respondent’s determination herein is inconsistent with his recent ruling that the American National Red Cross is not an agency of the United States for purposes of section 911. Rev. Rul. 60-36, 1960-1 C.B. 279. Without passing on the validity of the ruling in question, we think the factual situation considered therein may easily be distinguished from the instant case. As noted in the ruling, the Red Cross is supported through voluntary contributions, not exclusively by the Federal Government, and due to the nature of its work it is necessarily independent of any particular government though it works in close cooperation with many governments. SBC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including!— ******* (2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * See letter ruling of January 10, 1957, quoted in the findings, supra, at 6.