A. J. MICHEL, JR. and RAYMONDE A. MICHEL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michel v. Commissioner
Docket No. 10420-75.
United States Tax Court
T.C. Memo 1977-345; 1977 Tax Ct. Memo LEXIS 93; 36 T.C.M. (CCH) 1388; T.C.M. (RIA) 770345; September 29, 1977, Filed A. J. Michel, Jr., pro se. Stanley H. Smith, Jr., for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency of $1,780.78 in petitioners' joint Federal income tax for 1974. The sole issue is whether petitioners must include in income certain payments they *94 received from their employer to reimburse them for personal living expenses incurred in Tehran, Iran, and whether, if such reimbursed expenses are includable in income, they represent expenses for food and lodging while away from home which are deductible under section 162(a)(2), I.R.C. 1954. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. Petitioners A. J. Michel, Jr., and Raymonde A. Michel, husband and wife, had their legal residence in Atlanta, Georgia at the time they filed their petition herein. They filed a joint Federal income tax return for their taxable year ending December 31, 1974, with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Since petitioner Raymonde A. Michel is a party solely because she filed a joint income tax return with her husband, A. J. Michel, Jr., will sometimes hereinafter be referred to as the petitioner. Petitioner A. J. Michel, Jr., has been employed by the Lockheed-Georgia Company, a division of Lockheed Aircraft Corporation, Marietta, Georgia ("Lockheed"), for more than 25 years. During the year here in issue, *95 he was employed as a service representative specializing in the electronics systems of Lockheed's C-130 airplane. When Lockheed sells an aircraft, it generally enters into a one-year contract with the purchaser to provide service and technical training with respect to the aircraft. Such contracts may be renewed by the purchaser, and are commonly renewed for periods of up to five years by purchasers in certain foreign countries such as Iran. Petitioner has served as a traveling service representative, performing services for Lockheed under such contracts, for approximately 12 years, and since 1968 has been assigned to various foreign nations: Pakistan (6 months); Saudi Arabia (4 years); Iran (2 years, 2 months); Abu Dhabi (1 year); Bolivia (pending at the time of trial). [1] Petitioner qualified for exclusion of income earned abroad under section 911, on the basis of physical presence abroad, in every year from 1968 through 1974. In both 1973 and 1974, petitioner filed Georgia state income tax returns and paid the tax shown due thereon. For four years prior to the fall of 1972, *96 petitioner was permanently assigned by Lockheed to Saudi Arabia. During that time he lived with his wife in Saudi Arabia, drawing his regular salary but no special travel allowance. In the fall of 1972, Lockheed reassigned him to Atlanta, and he and his wife returned to Atlanta and rented an apartment there. In November 1972 (apparently less than a month later), petitioner received a letter of assignment, Travel Authorization and Expense Report ("TAER") #12900, to complete the remaining two months of a one-year contract in Tehran, Iran. Lockheed considered this a temporary assignment, and therefore authorized petitioner to receive a daily allowance for meals and laundry, a housing allowance, and an automobile mileage allowance, during the period of his duty in Tehran. Petitioner was assigned to Tehran pursuant to contract GLX 139 between Lockheed and the Government of Iran. This contract was due to expire at the end of December 1972, but Lockheed and petitioner anticipated that it would be extended for at least one year, but probably no longer. Satisfied with petitioner's performance, the Iranian Commanding Officer (Colonel Poleesien) indicated in December 1972 that the contract *97 would be extended through 1973, and a formal contract renewal was signed in April or May 1973 covering the period through December 1973. Petitioner remained in Tehran throughout 1973 and continued to draw his meals, lodging and mileage allowances under TAER #12900, his original letter of assignment to Tehran. Lockheed and petitioner anticipated that Westinghouse Corporation, which held the prime contract with Iran to which Lockheed's contract was subordinate, would take over Lockheed's functions by the end of 1973. This did not occur, however, and Lockheed therefore entered into a new contract with Iran, GLX 232, covering the calendar year 1974. Petitioner performed for Lockheed under this new contract throughout 1974. At the end of December 1974, petitioner terminated the assignment and left Tehran. During 1974, petitioner continued to be paid his meals, lodging and mileage allowances pursuant to TAER #12900, his original letter of assignment to Tehran. Although Lockheed's contracts with Iran called for Lockheed to assign technical personnel, Iran reserved the right to object to individual employees whom it did not find satisfactory. In fact, Lockheed has encountered considerable *98 problems with maintaining personnel in Iran, and other United States corporations active in Iran have apparently had similar experiences. United States citizens working in Iran may be forced to leave for business or political reasons on very short notice, and it was the expulsion of petitioner's predecessor in 1972, two months before the end of his contract, which necessitated petitioner's original assignment to Iran. Both Lockheed and petitioner were concerned throughout petitioner's tour of duty in Iran that petitioner might be forced to leave by the Imperial Iranian Air Force, for which he was working, or by Iranian political authorities. They continued to share this concern despite the fact that petitioner's immediate superior, Colonel Poleesien, expressed satisfaction with petitioner's work as early as December 1972, and specifically demanded that petitioner be the individual assigned by Lockheed under contracts GLX 139 (1973) and GLX 232 (1974). In November 1972, when petitioner received his original letter of assignment to Tehran, he and his wife moved out of their apartment in Atlanta. Petitioner left for Tehran, and his wife moved in with her mother, who also lived *99 in Atlanta; they placed some personal effects which they did not take with them in storage. In January 1973, petitioner moved from a hotel to an apartment in Tehran, and his wife came from Atlanta to join him. Petitioner and his wife remained together, living in the Tehran apartment, until the fall of 1974, except for a period of approximately four months in the fall of 1973 when petitioner's wife visited her mother in Atlanta. Petitioner terminated his lease on the Tehran apartment on October 31, 1974, and moved into a hotel for the remainder of his stay. From November 1972 through December 1974, neither petitioner nor his wife maintained a residence in Atlanta. TAER #12900, the letter of assignment which petitioner received in November 1972, authorized him to receive up to $12 per day for meals, laundry, and valet service; reimbursement for actual expenses for lodging; and a personal mileage allowance for automobile travel. During the entire 2 year and 2 month period of his assignment to Iran, petitioner filed monthly travel expense reports and received, on the basis thereof, advances toward and reimbursement for his expenses for meals, lodging and automobile travel. In 1974, *100 petitioner received from Lockheed, as travel expenses pursuant to the November 1972 letter of assignment, a total of $13,192.03. [2]
Lockheed paid petitioner $29,949.85 during 1974, which represented the total of his salary and travel reimbursements. Lockheed withheld Federal income taxes from all payments made to petitioner after the total amount paid in 1974 reached $20,000. On their 1974 Federal income tax return, petitioners excluded from income $13,192.03 as employer reimbursements of expenses for meals and lodging away from home, and excluded the remainder of the $29,949.85 ($16,757.82) pursuant to section 911. The Commissioner disapproved of this treatment. Instead, the Commissioner treated the entire $29,949.85 as compensation, but excluded therefrom $20,000 pursuant to section 911, and further allowed the standard deduction and two personal exemptions. OPINION Petitioner A. J. Michel, Jr., an employee of Lockheed Aircraft Corporation, was assigned to Tehran, Iran, during *101 the entire taxable year here in question, 1974. He received from Lockheed $13,192.03 during that year as reimbursement for meals, lodging and automobile mileage in Tehran. Although petitioners frame the issue in the case as whether they are required to report the reimbursements as income, it is clear that such reimbursements constitute gross income to petitioners within the meaning of section 61, I.R.C. 1954. Commissioner v. Glenshaw Glass Co.,348 U.S. 426; Coombs v. Commissioner,67 T.C. 426, 470 (on appeal, C.A. 9); Verner v. Commissioner,39 T.C. 749; see Cockrell v. Commissioner,38 T.C. 470, affirmed 321 F.2d 504 (C.A. 8). The real issue, then, is whether petitioners are entitled under section 162(a)(2), I.R.C. 1954, to a deduction of $13,192.03 for expenses for meals and lodging incurred while away from home in the pursuit of a trade or business. [3] Since the Commissioner has not denied that petitioners did in fact expend the amounts claimed for the purposes alleged, the only issue for our decision is whether A. J. Michel, Jr., was "away from home" within the meaning of section 162(a)(2) when *102 he was in Tehran, Iran, during 1974. See Commissioner v. Flowers,326 U.S. 465. We hold that he was not. The question of whether a taxapayer is away from home within the meaning of section 162(a)(2) is essentially a question of fact to be determined from all the facts and circumstances of the case, Scotten v. Commissioner,391 F.2d 274 (C.A. 5); see Tucker v. Commissioner,55 T.C. 783, 786, but the principles that guide the decision have long been established. See, e.g., Kroll v. Commissioner,49 T.C. 557, 561-63. *103 A taxpayer's home, for purposes of section 162(a)(2), means the vicinity of his principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Tucker v. Commissioner,supra,55 T.C. at 786; Kroll v. Commissioner,supra,49 T.C. at 561-62; cf. Commissioner v. Stidger,386 U.S. 287, 290-91. When a taxpayer who maintains a residence in the vicinity of his principal place of employment is required to travel to a different location for temporary work, he is considered to be "away from home". Peurifoy v. Commissioner,358 U.S. 59 60-61; Michaels v. Commissioner,53 T.C. 269; Dowd v. Commissioner,37 T.C. 399. A taxpayer who accepts permanent or indefinite employment in a location different from that of his residence, however, is considered to have moved his tax home to the new location, and is therefore no longer considered away from home. Jones v. Commissioner,444 F.2d 508 (C.A. 5), affirming 54 T.C. 734; Tucker v. Commissioner,supra,55 T.C. 783; *104 Kroll v. Commissioner,supra,49 T.C. 557; Cockrell v. Commissioner,supra,38 T.C. 470, affirmed 321 F.2d 504 (C.A. 8). A job may be considered indefinite or permanent if, under all the circumstances, it appears likely to last beyond a short period of time, even if there is no firm commitment that it will do so. Cockrell v. Commissioner,supra,38 T.C. at 479. A job which is temporary at the outset, may become permanent or indefinite by a change of circumstance or merely the passage of time. Norwood v. Commissioner,66 T.C. 467, 470; Verner v. Commissioner,39 T.C. 749, 754. Finally, an itinerant worker who maintains no permanent residence is never considered away from home because he has no home to be away from. James v. United States,308 F.2d 204 (C.A. 9); Scotten v. Commissioner,supra,391 F.2d 274 (C.A. 5), affirming a Memorandum Opinion of this Court; Bochner v. Commissioner,67 T.C. 824, 828; Wirth v. Commissioner,61 T.C. 855, 859. Petitioner A. J. Michel, Jr., has been employed since 1968 *105 as a travelling service representative for Lockheed. His job is to provide service and training for the purchasers of Lockheed aircraft at their places of business. Under Lockheed's contracts with the purchasers, Lockheed provides such services for at least one year after sale, and often for longer periods up to five years. In the course of his employment, petitioner has been assigned under long-term service contracts in Louisiana, Pakistan, Saudi Arabia, Iran, Abu Dhabi, and Bolivia. The shortest of these assignments, Pakistan, lasted six months; the others all lasted more than a year and the longest, Saudi Arabia, lasted four years. Petitioner has lived outside the United States Virtually continuously since 1968, qualifying for the benefits of section 911 in each of the years 1968 through 1974. He does not maintain a house in the United States.Under the circumstances, for purposes of section 162(a)(2), petitioner must be considered to have moved his tax home from assignment to assignment. Scotten v. Commissioner,supra,391 F.2d 274 (C.A. 5); Wirth v. Commissioner,61 T.C. 855; Tucker v. Commissioner,supra,55 T.C. at 786-87. *106 The facts that petitioner's employer was located in Atlanta, Georgia, and that petitioner may have returned to Atlanta between assignments for brief periods, are insufficient to make Atlanta his tax home during his extended periods of residence abroad. Jones v. Commissioner,supra, 54 T.C. at 740; see Claunch v. Commissioner,29 T.C. 1047, 1051-52, affirmed 264 F.2d 309 (C.A. 5). Indeed, petitioner concedes that his tax home was Saudi Arabia during the four years he lived there. Petitioner argues, however, that at the conclusion of his stay in Saudi Arabia he was reassigned to Atlanta, Georgia, and that he in fact returned to Atlanta and established his residence there. Petitioner did rent an apartment in Atlanta in the fall of 1972, upon his return from Saudi Arabia, and he and his wife lived there for a period of one or two months. Petitioner next argues that his assignment from Atlanta to Tehran was temporary, and that he maintained his residence for tax purposes in Atlanta throughout his stay in Tehran. Assuming that petitioner established a tax home in Atlanta in the fall of 1972, and even assuming that petitioner's initial *107 assignment to fulfill the last two months of a one-year contract in Tehran could be considered a temporary assignment away from his home in Atlanta, we cannot conclude that he was away from home in 1974. Upon his original departure for Tehran petitioner expected that his two-month assignment would likely be extended for another year. He immediately released his Atlanta apartment, and his wife went to live with her mother. In early 1973, when it was clear that he would remain in Tehran another year, petitioner rented an apartment in that city and his wife flew from the United States to live in Tehran with him. Petitioner's tour of duty was extended to the end of 1974, and he and his wife remained in Tehran throughout 1973 and 1974, except that his wife returned to Atlanta to visit her mother in the fall of 1973. They had brought an undisclosed portion of their belongings with them, and had stored some effects in Atlanta. These facts strongly suggest that, prior to the beginning of 1974, petitioner's employment in Tehran had ceased to be temporary and had become indefinite in character, and that petitioner's tax home became Tehran. Norwood v. Commissioner,supra,66 T.C. at 470; *108 Verner v. Commissioner,39 T.C. at 754; Cockrell v. Commissioner,supra,38 T.C. at 479. Petitioner stresses the fact that, in view of economic and political realities of life in Iran, neither he nor Lockheed could be sure that petitioner would be permitted to fulfill his anticipated tour of duty in Iran. He has conceded, however, that his immediate commanding officer, Colonel Poleesien, expressed satisfaction with his work as early as December 1972, and specifically required that petitioner be the technician assigned under contracts GLX 139 and 232 for the years 1973 and 1974. He has also conceded that Lockheed anticipated from the beginning that contract GLX 139 would be extended at the end of 1972 through the end of 1973, which in fact occurred. And we have repeatedly held that it is the reasonable expectation of indefinite employment, not absolute certainty thereof, which renders the new business locale the taxpayer's home for purposes of section 162(a)(2). Cockrell v. Commissioner,supra,38 T.C. at 479; Albert v. Commissioner,13 T.C. 129, 131. Moreover, petitioner's job was to perform technical *109 services under Lockheed contracts in various countries throughout the world, for varying periods of time and under varying political regimes. Unlike the taxpayers in Michaels,supra, and Dowd,supra, he did not have an established place of work in the United States, where he had been stationed for a substantial length of time and where he had maintained a permanent residence for himself and his family. Cf. James v. Commissioner,supra, 308 F.2d 204 (C.A. 9); Scotten v. Commissioner,supra,391 F.2d 274 (C.A. 5). He had no expenses for maintaining any residence in Atlanta while he himself was working in Tehran. See Michaels v. Commissioner,supra,53 T.C. at 274-75. And where we found as a fact that the taxpayer in Dowd did not at any time intend to remain in Japan indefinitely or permanently, see Dowd v. Commissioner,37 T.C. at 409, we think the reasonable inference to be drawn from petitioner's testimony is that he expected to remain in Iran for as long as Lockheed's work and his own political and technical acceptability permitted. On the basis of this *110 record, we hold that, during 1974, petitioner's tax home was Tehran, Iran, and he is not entitled to a deduction for his expenses for meals and lodging in Tehran. Decision will be entered for the respondent. Footnotes
1. Petitioner also served for a year and a half in Louisiana, prior to his foreign assignments.↩
2. The expenses listed on petitioner's monthly travel expense reports for 1974 actually total $13,292.03. The discrepancy is nowhere explained and is apparently petitioner's arithmetic error.↩
3. As a matter of administrative convenience, the Commissioner in some cases permits taxpayers to omit from their returns reimbursements from their employers of expenses deductible under section 162(a)(2). Section 1.162-17(b), Income Tax Regs. He also has ruled that such reimbursed, deductible expenses need not be included in a taxpayer's earned income for purposes of section 911. Internal Revenue Service, Tax Guide for U.S. Citizens Abroad, 1975 edition (Publication 54). In both cases, however, the precondition for such treatment is that the reimbursed expenses be deductible under section 162(a)(2)↩.