**Joseph T. SMITH and Marie A. Smith, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 82–7090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1982.

Decided March 16, 1983.

Joseph T. Smith, pro se.

Kenneth Greene, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before MERRILL, Senior Circuit Judge, FLETCHER and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The issue in this case is the interpretation of the phrase "paid by the United States" in I.R.C. § 911(a)(1) as worded in 1975 and 1976.[1] Petitioner Joseph Smith excluded overtime pay he received as a customs inspector in the Bahamas from his taxable income on the theory that it was paid by private airlines, not the United States. The Commissioner issued a deficiency, and the Tax Court agreed. We affirm.

I.R.C. § 911(a), as it appeared in 1975 and 1976, provided in relevant part:

§ 911. Earned income from sources without the United States

(a) General Rule.

The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) Bona fide resident of foreign country. [For certain qualified persons,] amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period.

Smith argues that his overtime pay was excludible under section 911(a)(1) because the government billed airline companies who requested customs inspections during off hours for the overtime services of U.S. Customs officials. Smith characterizes the United States as a mere conduit for funds paid to him by the airlines.

Airlines requesting overtime services are required to pay a reasonable rate of extra compensation for those services, and to post a bond or deposit sufficient funds with the Customs Service. 19 U.S.C. §§ 267 (1976), 1451 (Supp. V 1981).[2] These statutes indicate that the airlines' payment obligation is to the United States government, not to the individual customs inspector who performs the overtime services. The airlines must pay "the appropriate customs officer", who in turn pays the inspectors. 19 U.S.C. § 267 (1976). In spite of the implication in section 267 that the overtime is paid with the very funds provided by the airline ("who shall pay the same to the . . . officers and employees"), it was stipulated in the Tax Court that the United States government, not the individual customs inspector, bore the risk of nonpayment by the airlines. Moreover, the customs inspectors on overtime were considered employees of the United States, not the airlines. They performed the same pre-clearance customs inspections during regular duty hours and on overtime. They were subject to hiring, firing, and supervision by the Customs Service, not the airlines who requested their services.

1. 26 U.S.C. § 911(a)(1) (1976). The section was amended in 1981. See Pub.L. No. 97–34, Title I, § 111(a), 95 Stat. 190 (1981).

2. The statutes read in relevant part:

The Secretary of the Treasury shall fix a reasonable rate of extra compensation for overtime services of customs officers and employees . . . . The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel . . . to the appropriate customs officer, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by the Secretary of the Treasury.

19 U.S.C. § 267 (1976).

Before any such special license to unlade shall be granted, the master, owner, or agent of such vessel or vehicle, or the person in charge of such vehicle, shall be required to deposit sufficient money to pay, or to give a bond in an amount to be fixed by the Secretary conditioned to pay, the compensation and expenses of the customs officers and employees assigned to duty in connection with such unlading at night or on Sunday or a holiday, in accordance with the provisions of section 267 of this title.

19 U.S.C. § 1451 (Supp. V 1981).

The relevant cases refute Smith's argument that the overtime compensation was "paid by" the airlines and not the government. In cases dealing with employees performing services for the government of Iran, several courts have held that a United States employee is not entitled to exclude income under section 911(a) even though the ultimate "source" of the funds received is foreign. *Commissioner v. Mooneyhan,* 404 F.2d 522, 527 (6th Cir.1968), *cert. denied,* 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969); *Johnson v. United States,* 390 F.2d 715, 717 (Ct.Cl.1968); *United States v. Johnson,* 386 F.2d 824, 825 (5th Cir.1967); *Commissioner v. Wolfe,* 361 F.2d 62, 67 (D.C.Cir.), *cert. denied,* 385 U.S. 838, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966).

In these cases, the United States government furnished employees of its Bureau of Public Roads to perform services for the government of Iran. Iran was to pay the United States for the salaries of the employees from a fund which was set up before any services were rendered. Like Smith, the employees remained under the authority and supervision of a department of the United States government, were paid by United States Treasury check, and had no separate contract with the third party who was obligated to pay the United States for their services. The courts reasoned that the Bureau of Roads employees remained United States employees and were therefore "paid by" the United States. The fact that a third party was the ultimate source of the funds was irrelevant when that third party had no separate contract with the employees, and no authority to hire, fire or supervise them. Thus, the salaries were not "paid by" the private third party merely because it was liable to reimburse, even in advance, the United States government. The airlines here, like the foreign "source" in the cases above, exercised no control or authority over the United States Customs inspectors.

Smith's claim is also inconsistent with the purpose of section 911(a). We examined that purpose in depth in *McComish v. Commissioner,* 580 F.2d 1323 (9th Cir.1978). The issue in *McComish* was whether the Trust Territory of the Pacific Islands constituted an "agency" of the United States for purposes of section 911(a). The panel found that the purpose of the exclusion generally was to encourage United States citizens to go abroad to share their technical skills. *Id.* at 1326. To place those citizens on an equal footing with citizens of the foreign country, the possibility of double taxation was eliminated by allowing exclusion of foreign earned income from gross income for federal taxes. *Id.* The exception for "amounts paid by the United States government or an agency thereof" was added to prevent a windfall to United States government employees in foreign countries. Because United States employees generally were not subject to foreign income tax, an exclusion from United States taxable income was not necessary or desirable. *Id.* at 1325-26. *See also Mooneyhan,* 404 F.2d at 525-27; *Wolfe,* 361 F.2d at 66-67 (purpose of non-exclusion of amount paid by United States was to prevent extension of exclusion to United States employees such as military and foreign service personnel).

Our holding in *Erlandson v. Commissioner,* 277 F.2d 70 (9th Cir.1960) does not support Smith's position. Although we focused there on the source of the funds, we said that if a taxpayer is a United States employee, "the conclusion necessarily follows that his wages were paid by the United States or an agency thereof." *Id.* at 72. Smith was compensated at all times as an employee of the United States, so that all of his income came within the ambit of funds which Congress indicated were to be taxed.

The judgment is AFFIRMED.