WILLIAM A. GILLIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gillis v. Commissioner
Docket No. 17782-85.
United States Tax Court
T.C. Memo 1986-576; 1986 Tax Ct. Memo LEXIS 27; 52 T.C.M. (CCH) 1128; T.C.M. (RIA) 86576; December 8, 1986. William A. Gillis, pro se. Robert J. Cuatto, for the respondent. DINAN
MEMORANDUM FINDINGS OF FACT AND OPINION DINAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat.    ) of the Code and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for the year 1979 in the amount of $8,933. Respondent also determined that petitioner was liable for additions to tax for failure to file a return under section 6651(a)(1) and for negligence or an intentional disregard of the rules and regulations under section 6653(a) in the amounts of $1,287.50 and $446.65, *29 respectively. The issues for our determination are (1) whether petitioner may avoid including in income payments he received while serving in NATO; (2) whether petitioner acted without reasonable cause and was negligent when he did not file a return for 1979; (3) whether petitioner may deduct certain interest expenses; and (4) whether petitioner is entitled to a casualty loss for the destruction of his Volvo. Some of the facts have been stipulated and are found accordingly. The stipulations of fact and attached exhibits are incorporated herein by this reference. For convenience and clarity our findings of fact and conclusions of law are combined in our opinion. At the time the petition herein was filed, petitioner resided in Glendale, Arizona. During 1979 petitioner was a lieutenant Colonel in the United States Air Force (Air Force). He was assigned to NATO (North Atlantic Treaty Organization) in Germany and worked under the supervision of a German general. During 1979 the Air Force reported that petitioner received $29,023 in salary. Petitioner testified that he spoke with the IRS representative in Bonn and was advised that he did not need to include his salary from NATO *30 in his income for 1979. Petitioner also testified that he sought the counsel of Air Force attorneys who informed him that he could rely on the opinion of the IRS representative. Relying on these representations, petitioner did not file an income tax return for 1979 because he believed that his income was tax-exempt. Respondent mailed petitioner a statutory notice of deficiency on March 8, 1985. [2]
Petitioner contends that he may exclude his salary from income under section 911(a). Section 911(a)(1) provides that a taxpayer may exclude payments from gross income if the taxpayer lived in a foreign country and received amounts "from sources without the United States (except amounts paid by the United States)." The crux of the dispute between petitioner and respondent is whether the payments received by petitioner were amounts paid by the United States. Petitioner argues that he was employed by NATO and the source *31 of his payments was NATO. Respondent argues that the Air Force paid petitioner's salary and, therefore, this case falls within the parenthetical "except amounts paid by the United States." In Smith v. Commissioner,701 F.2d 807, 809 (9th Cir. 1983), affg. 77 T.C. 1181 (1981), the Ninth Circuit stated that the purpose of this exception was to "prevent a windfall to United States government employees in foreign countries," citing McComish v. Commissioner,580 F.2d 1323 (9th Cir. 1978). The Ninth Circuit went on to decide that the appellant, a United States customs inspector stationed in the Bahamas, could not exclude overtime pay because his salary was paid by the United States government even though the airlines had to reimburse the Customs Service for the added costs. "The fact that a third party was the ultimate source of the funds was irrelevant when that third party had no separate contract with the employees, and no authority to hire, fire or supervise them." Smith v. Commissioner,supra at 809. The same legal reasoning *32 applies here. Petitioner did not show that he had a separate contract with NATO. He was assigned to NATO by the Air Force. NATO did not have the authority to hire petitioner or to fire him from the Air Force. Furthermore, petitioner's paycheck was made out by the Air Force rather than NATO. Therefore, even if petitioner could prove that NATO was the original source of the funds used to pay his salary, he was controlled and paid directly by the Air Force. As such, petitioner should not be allowed a windfall merely because he is stationed overseas in an allied command. Petitioner has not shown that he should be treated any differently from any other military personnel serving overseas. Accordingly, we hold for respondent on this issue. However, we cannot agree with respondent that petitioner is also liable for additions to tax because he was mistaken as to the law about his salary. Respondent argues that petitioner did not have reasonable cause for his failure to file a return and to pay taxes. However, petitioner testified that he was relying on the advice of the IRS representative in Bonn and legal counsel from the Air Force. *33 Taxpayers may reasonably rely on the opinions of competent counsel if they have made a good faith disclosure of all the relevant facts. The relevant facts petitioner needed to disclose were that he was a U.S. serviceman and that he was working for NATO. The IRS representative apparently drew his conclusions of law after having been provided this information. Therefore, petitioner's reliance on his advice was reasonable cause for his failure to file and to pay taxes. See Stockstrom v. Commissioner,190 F.2d 283 (D.C. Cir. 1951). The remaining issues are whether petitioner substantiated his deductions. Petitioner contends that he is entitled to deductions for interest paid on two mortgages. Petitioner owned two houses during 1979, one in Virginia and one in Florida. The house in Virginia was the family residence and the house in Florida was a rental property. The parties have stipulated that petitioner was making mortgage payments on the Virginia house in the amount of $982 per month. Petitioner testified that he paid $4,713 in interest in 1979. Respondent argues that petitioner did not show which portions *34 of the mortgage payment were principal, interest, taxes, or insurance. Petitioner testified that the term of the mortgage was amortized over thirty years. The original principal of the mortgage was $98,500, and the interest rate was 9-1/2 percent. We found petitioner's testimony on the stand to be straightforward and credible. Unfortunately, petitioner failed to provide the exact amortization schedule of the loan. We are therefore unable to make an exact determination of the interest paid by petitioner. It is clear that petitioner did make interest payments on his mortgage and should be allowed some amount as a deduction, and the information he provided is sufficient to allow us to make a reasonable approximation of the interest paid. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Therefore, we find that petitioner is entitled to deduct $3,555 of interest on the Virginia house mortgage. To substantiate his interest deduction for the Florida house, petitioner testified that there were a first and second mortgage on the house in 1979. Petitioner also submitted two *35 amortization schedules for loans on the house. These documents were summaries prepared for petitioner because the original documentation had allegedly been destroyed in a fire.One schedule clearly indicates that there was a mortgage on the house in 1979 and that $97.54 in interest was paid. Petitioner may deduct this amount. The second amortization schedule, however, contradicts petitioner's testimony. The second schedule shows that the total amount of the loan was $14,274.73 and that the first payment was due in August 1985.That is outside the tax year in question and is irrelevant to our inquiries into petitioner's deductions for 1979. Petitioner has failed to substantiate the second mortgage in any other fashion, and therefore may not deduct any related interest. Petitioner also contends that he paid $900 in interest in 1979 on a car loan. Petitioner has presented no documentary evidence whatsoever to show that he took out such a loan. All that we have before us is petitioner's uncorroborated testimony concerning the purchase of a Chevy van. Such uncorroborated testimony is insufficient to carry petitioner's burden of proof, especially in view of the fact that petitioner's *36 testimony was extremely brief and imprecise. Accordingly, on this question we hold for respondent. The final issue we must decide is whether petitioner had a casualty loss, which may be deducted, when his Volvo was destroyed in an accident. The parties stipulated that petitioner purchased a used Volvo for $2,000 in 1978. The car was wrecked in 1979 and petitioner was reimbursed in the amount of $912 by a Swiss insurance company. A personal casualty loss under section 165 is only allowable in the year in which it is sustained and the amount of loss is limited to the lesser of the difference in the fair market value before and immediately after the casualty loss or the adjusted basis of the property. This amount must be reduced by any insurance recovered and the $100 limitation on individual losses. Section 165(c)(3); section 1.165-7(b)(1), Income Tax Regs. Determinations of fair market value before and after the casualty shall generally be made by competent appraisal. Pfalzgraf v. Commissioner,67 T.C. 784, 787 (1977). Petitioner argues *37 that he was not adequately compensated for the value of his car because Swiss insurance companies are run differently from United States insurance companies. Respondent maintains that since petitioner has not offered proof of the fair market value of the Volvo by competent appraisal, the casualty loss is limited to the amount of the insurance recovery. We agree with respondent. Petitioner could easily have offered a blue book appraisal on the value of the car or an auto dealer's appraisal of similar automobiles. Without such proof petitioner cannot prevail. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Accordingly, respondent's determination to disallow the casualty loss is sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the tax years in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The normal statute of limitations under section 6501(a) does not apply in this case because petitioner never filed a return which would start the running of the statute.↩